The next case on this morning's docket is the case of Siegel v. Del Moine v. Douglas Neumeyer and for the appellant we have Elizabeth Crotty and we have Mr. Patrick Bailey at the lead and you may proceed. May I please the court? Certainly. Again, my name is Elizabeth Crotty and I represent Douglas Neumeyer in this matter. This was a closely balanced case where the jury initially indicated it was a hung jury on the sole charge of domestic violence and subsequent offense. This charge stemmed from an altercation between Shelley Crotty and Douglas Neumeyer. Both parties had minor injuries. Both claimed that the other person had caused those injuries, yet both claimed that they did not cause the other's injuries. No one else was present during this incident. Therefore, the jury's verdict rested on their determination and the credibility of these parties. Three errors worked to interfere with the jury's deliberations and to undermine the fairness of the verdict in this case. First, the state elicited improper opinion testimony from Officer Tisch. Second, the state omitted the knowledge element in describing the elements to the jury during closing arguments. And finally, the trial court gave improper supplemental instructions when the jury attempted to declare itself hung, which interfered with their deliberations. And placed improper pressure on them to render a verdict in this case. Individually, but especially in combination, these errors threatened the reliability of this verdict in this very close credibility case. For those reasons, we ask that this court reverse Mr. Neumeyer's conviction and grant him a new trial. Turning to the first issue, the state improperly elicited a series of answers from Officer Tisch, which served to both comment on the nature of the injuries and the causation of those injuries, and then also to make very clear to the jury that he credited Pratty's version of the defense, but not Neumeyer's. The state asked, what did appear to you had happened to Shelly's face? Tisch responded, as if she had been struck in the face. They also asked him, did it appear to you that the defendant had been struck in the face? He responded, from the injuries, no. He went on to indicate that these conclusions were made from my experience, and he said, from my experience through my years in law enforcement, but did not point to particular experiences or a basis for that opinion. Well, I think you did talk about the fact that Mr. Neumeyer had gravel and some dirt in his face, and apparently she did not. At the – I think two points are important in considering that part of his testimony. First, after the two questions that I just read to you, the state then volunteers, is that because of the dust and the debris that was on the defendant's face? He responds, that as well. The – So you're saying that that was kind of an addition rather than how he arrived at that conclusion. Correct. Correct. It was an addition volunteered by the state. It's also an addition that is not inconsistent with Mr. Neumeyer's own testimony. He acknowledged that – you know, he indicated that probably pushed him out of the car and he fell on the gravel. She indicated he just fell out on his own. But in either case, he's acknowledged that he's been on the gravel. So the existence of debris in addition to the other injuries doesn't answer the question of causation. And that alone doesn't present a sufficient basis for opinion to support this type of testimony. Further, he goes on to testify in response to the state questions. The state asks, how long after Shelly arrived on the scene did it take you to determine that you were going to arrest the defendant? And he responds, the extent to which it took for her to tell me her side of the incident that occurred. So I would approximate 10 minutes. This served no purpose other than to undermine the defendant's credibility and both servants' friends' credibility. Yeah. And I understand your emphasis on that. However, if it had occurred the other way around, he had to hear, I would presume, or he wanted to hear both sides of the story. So if she had offered hers first and him last, it still would have occurred after approximately, you know, after his version of the story instead of hers. He would have made possibly the same determination. Do you see what I'm saying? He had to wait until he heard both sides. Well, I would offer that his opinion and his determination to arrest me, Mariam, was not relevant in this case. The jury didn't need to know that Neumeier was arrested. They particularly didn't need to know that Neumeier, rather than Crotty, rather than both of them, were arrested. So this is simply offered by the state to say it only took you 10 minutes to determine that she was telling the truth and not Mr. Neumeier, who you had spoken to. Are you saying that the jury didn't need to know that he was arrested and charged? So let me back up just to make sure that I'm clear on what I'm telling you. The jury knows he's been charged. That's clear. The jury doesn't need to know that he was charged because Tisch believed Crotty's story and not his. So that's what we have in this comment about the arrest. And, you know, in a case like this where both parties are alleging injuries, both parties are alleging that the other person caused the injuries, it certainly could have been the case that the officer arrested them both and charged them both. So what the state's highlighting to the jury is that's not the case. It's the case that he saw these injuries. And this is, you know, we can just undermine this. In their opening statement, they tell the jury Officer Tisch looked at their injuries and he listened to what they both had to say. He determined that the circumstances and the injuries corroborated Shelley Crotty's version of the events that evening. They fully corroborated it. And in closing, they return to that scene and say the police made the decision that night to arrest this man for domestic battery, not Shelley Crotty. So we have throughout the trial they're hammered with not only was he arrested, not only was he charged, the officer evaluated the credibility and you can take his word for it. And that's where that's what's truly improper and truly prejudicial in this matter. Turning to the second issue, in combination with this improper opinion testimony, the state then misstated the elements to the jury in closing arguments. What it actually had to prove was that Mr. Neumeier knowingly and by means, by any means, made physical contact of an insulting or provoking nature with a family or household member. What it told the jury was that it had to prove two elements beyond the reasonable doubt, that the defendant made physical contact of an insulting or provoking nature with Shelley Crotty, and that at the time he did that, she was a family or household member. It left out the word knowingly. And that was critical in this case because despite the differing accounts of the events, Mr. Neumeier acknowledged that he may have made contact with Crotty and that that contact may have caused her injuries and fully acknowledged that they had a domestic relationship. So the only thing with that issue was whether Mr. Neumeier knowingly did so, whether he made this contact knowingly. And so, again, in another case, this might have just been a misstep or a minor issue, but where the part of the matter was credibility and the accounts were close and where the jury itself came forward initially and indicated we think we're a hung jury, this could have made the difference in this case. But didn't at least the prosecution attempt to clarify and rebuttal? They stated the elements again in a way that then re-included the knowledge element, but they also stated again that, you know, so did we prove that the defendant punched her? Yes, we did. Was she insulted or provoked by the contact? Yes, she was. Was she a family or household member? Yes, she was. So we have it going back and forth. And, again, I would submit that in another case, that plus the jury instructions very well may have solved the issue. But in this case, we have a misstatement of the elements, a misstatement of the critical element, in combination with the other errors in a very close case. And based on that, this, again, works to undermine the verdict in the case. Turning to the third issue, and we've noted a few times now, the jury initially, after about an hour of deliberations, came back and said, we think we're a hung jury. Can we declare ourselves hung? The parties agreed the print instruction did not need to be given, but then the judge went on to do two things. The trial court told the jurors that it needed to look specifically at the propositions instruction and that that would tell them exactly what they needed to do. It then emphasized to the jury, you took an oath, ladies and gentlemen, and in that oath you swore or affirmed to render a verdict, and that is what you need to do. Yeah, I do want to interrupt you. I'm sorry. And I don't know that this is in full context, but what I did read in the state's brief is that the defense attorney basically said, oh, no, I think it's too early for a print instruction and basically dissuaded the giving of a print. Is that correct? The defense attorney did agree that the print instruction did not need to be given, but the trial court didn't read to the defense attorney, this is what I'm going to say. So I wouldn't say that the defense attorney signed on to this. And our argument isn't that they needed to give the print instruction, but if the trial court was going to invoke the oath and tell them that it needed to follow the instructions and render a verdict, it needed to do what print does, which is to leave open the possibility of a hung jury. In other words, to give the print instruction. I would say that if the trial court wanted to give further instruction and invoke the oath, then it needed to follow the requirements of print. It certainly could have said you need to continue to deliberate at this time, but to add these extra measures in this very close case may be worse. Your argument basically is there was no obligation. It's discretionary whether to give the print instruction. But in these comments that are like semi-print, the trial court left out the element of your own convictions, your own honest deliberations by individual jurors. Yes, sir. Okay. Thank you. Thank you. Thank you for the opportunity. Mr. Daly. Good morning, Your Honor. I'm here to plead the court, counsel. Patrick Daly for the state. If I may, I'll start with that last issue first since there's a couple of questions. I want to discuss it briefly. As I understand it, Your Honor, and I think it's a properly framed one, is that if a court is going to be instructive, it has to be instructive in such a manner that it's not going to coerce the jury to render a verdict that it has no choice but to render a verdict in the case. Whether it's a print instruction or not a print instruction, any instruction that's given to the jury has to be cautiously given to not give that kind of impression. The case that the defendant relies upon, the jury had been told by the court that you took an oath to render a verdict, go back there and get a verdict. The court had found that that essentially coerced a verdict from the jury and essentially told them to surrender and, you know, deeply held convictions you may have in service of giving them the honest verdict. Now, while there's certainly some factual parallels, I do think that there's a bit of a distinction here. Number one, and it's something of a nuance, I suppose, but when you look at the court's actual instruction in this case, the jury was really being directed to focus upon consideration of the issues. The jury was told that they had given an oath to come to a verdict, but it did say that, you know, you need to go back and look at these things and utilize this instruction, which are the elements, the propositions in order to determine, you know, a verdict in this case. And then it said that I'm not going to declare a hung jury at this time. So there was an overt qualification in the court's statements to the jury that were not present in the case cited by the defendant, which I think would at least implicitly suggest that I want you to go back and keep thinking about this and I'm not going to get a hung jury at this time. And I know that perhaps leaving this distinction from the defendant's side of the case may seem minuscule, but minuscule distinctions can be critical distinctions as well. In an instance such as this where it's certainly clear that the judge has imparted the impression that a hung jury is not a possibility, then I think that that's a critical distinction that this court needs to take in mind. Isn't a paraphrase of prim without the element of, you know, we're not asking you to overcome your, you know, truly held convictions, isn't that in and of its nature because of that omission essentially coercive in the prim, model prim instruction, specifically guards against that? I guess I'm going to disagree with you, Justice Goldenberg,  I think it was more the court's sort of crafting its own instruction, if you will, a judge's instruction under the belief, and this is something that was discussed with the parties and the parties have assented to this particular approach, which is, of course, why I make the estoppel argument in this case, that I want to see if they're looking at these propositions instructions and the juror, the foreperson, when the jury was brought out to discuss this, had explicitly stated, well, yeah, but not really. So I think that really kind of triggered in the judge's mind to go back. It was probably judicious to throw in there, you know, the oath, because that probably triggers the argument in this case, but I think when you look at the instruction as a whole in context and what the jury is being asked to do, it wasn't being given a coercive instruction. I do think, respectfully, I think the prim, non-prim distinction, this is a bit of a red herring here, I don't think prim ever played into this in anybody's mind. I agree with you. I don't think prim is, you know, the beginning and the end of the end all. But I think if I understand the defense argument, it is that without some either explicitism of prim or paraphrasing of the proposition that you're not supposed to surrender your deeply held evidence-based whatever convictions that by nature either it is coercive. I understand where you're coming from, Justice Goldmarsh, and I think that where you and I are probably going to differ is that your view of it is that the court is required to tell the jury that they should hold to their respective beliefs. My perspective is at this point in time, the court is required to not tell the jury to not hold. And there is a distinction here. I mean, and that's really kind of the genesis of this case that he relies upon is that when you give an instruction that tells a jury that they have no choice, it's the flip side of what prim is supposed to do. But again, prim is not required, and if it's not required, then it doesn't necessarily have to contain those elements. It just can't tell a jury that you must reach a verdict under any circumstance or, you know, that's it. The fact that he throws in the final statement at this time, that kind of saves it from appearing that there's coercion, that they can't leave until they get a verdict, that there will be the possibility that, again, they believe that they're gone and need instruction about. Correct. Is that kind of where you're going? That is very close to where I'm going. I'd say it's really right on. It's part of it. I mean, I just think, again, if you look at the instruction in its full context, I think you'll see that it wasn't intended to coerce. The strongest parallel between the defendant's side of the case and this case was, of course, reference to the oath. But I think that that reference, I think, was qualified both by the manner in which the jury was being told and the intent of the court of being pulled back. It wasn't told that, in the defendant's case, go back and get a verdict. That's what you were sworn to do, and therefore, that's what you have to do. And I understand that that would violate the principle. I think they call it an alum or something kind of, you know, a construction that you have to come to a specific verdict or else, I mean, that's your duty. You have no other duty but that. I don't believe that this case falls within that because of the context, because of the qualification that the court gave. So I guess I would ask this court to really kind of give careful consideration to the precise wording of it, wording that had been, you know, obviously was okay with the parties at the time it was given, that they go back and have a look at the proposition of destruction and take a look at those and see if that will guide you towards a verdict. I mean, that's what I think the court's factual words to the jury. So there is a distinction. And if we were talking about a prim or a proper prim destruction, I think that's a different consideration altogether. I think that the principle narrower focus here is did this jury go back thinking recently that it had no choice but to give a verdict. And I think the fact that the defense argued said, well, you know, this should have only taken about an hour to come to a verdict because it was simple and, you know, and so it seems suggestive of coercion. But the jury took many hours, actually, a number of hours. So obviously they were still hashing things out for a long time before they came to it. So if they had the impression, I guess from my perspective, if they had the impression that they had to come back with a verdict right away, I think we would have seen a much quicker turnaround time than we did in this case. And that's how I would view it in any respect. Broadly speaking, I'm not sure the time of jury delivery means anything because we don't know what they're saying back there, nor are we allowed to know. So, in any event, that's all I have to say on that. And I probably used up all my time. But I'll go ahead and I'm going to go back to the first issue. This is really kind of one of the – we're sort of really getting into this new territory of talking about Illinois Rules of Evidence. And I discussed this case of Illinois Rule of Evidence 701, which specifically addresses lay opinion testimony. It's obviously now admissible, you know, under the particular circumstances that this rule allows. And interestingly enough, Illinois Rule of Evidence 704 allows lay witnesses to make ultimate conclusions, ultimate factual opinions, which is something – and also a change from the prior case law that preceded that. This is an adoption of the equivalent federal rules. In this rule, it states that if a witness is not testifying as an expert, okay, then the witness's testimony in the form of opinions is limited to those opinions which are, A, rationally based on the perception of the witness, B, helpful to a clear understanding of the witness's testimony or the determination of a fact of issue, and C, not based on scientific, technical, or other specialized knowledge within the scope of Rule 702, the Rule of Evidence 702. I think if you take a strict application of the facts of this case into that rule, I think that it falls neatly within the permissibility. Number one, certainly it's rationally based on Officer Tisch's perceptions. And I do want to add one real quick thing here. There was a question that was raised about the dust and the debris on the defendant's face. Tisch testified to that. And when those words were not put in his mouth by the prosecutor, he testified. The prosecutor did ask him when we were talking about whether he thought that the defendant's injuries were consistent with being hit or slapped. And she said it was because of the fact that there was debris and stuff on the face. And he said, well, among other things, yeah. So what he did prior to that indicated this was his perception of what he saw on the defendant's face in terms of describing the abrasions that he observed. So they were based on the perception of the witness. They're certainly helpful to a clear understanding of the witness's testimony. There was a photograph taken of the victim in this case, but I think you'll see when you look at it, it's not really a very good or very clear photograph. And I think that Tisch's observations at the scene at a time, you know, pretty near when all this went down, it's going to be helpful to the jury given the fact that there's a presence since at the scene observation. And then finally, certainly not based on any scientific, technical, or specialized knowledge. I'm out of time. I'll rest on the remainder of my arguments, Your Honor. Thank you very much. Okay, thank you. You have the opportunity to leave us. Isn't this what police officers have to do all the time is give testimony similar to this? And I'm having trouble differentiating this case from so many others where they are giving their observations of what they think and how they decide to charge. The charging decision may in some cases be relevant. It's not in this case because we know that he was charged. So that's not really information that prejudiced anyone, is it? Again, the reason the discussion about who was arrested and who was charged becomes prejudicial in this case is because based on the facts, it's not clear that Mr. Neumeier would have been the only person charged. And because the state then picks up on his testimony to say you can take Tisch's word for it, essentially. He looked at these injuries. He decided the causation was consistent with what Pratty said, not consistent with what Neumeier said, and that's enough. So in this case, it was an actual error. Was he charged by information or grandeur? Your Honor, I'll have to double check that. I believe it was by information. Now, turning to the jury instruction issue, the subsequent instruction may not have been the most egregious error possible. It may not have been extreme. But in this case, even minuscule differences in this context of a very close credibility-based case could have made the difference. And what's important is that each of these errors, while not extreme in another case, worked together here to improperly bolster Pratty's testimony, improperly undermine Mr. Neumeier, and to tell the jury improperly that it would simply take the police officer's authority on this matter. And that was the error in this case. And subject to any additional questions, for all those reasons, we ask that in this extremely close case, the court find that these errors did amount to reversible error and to reverse Mr. Neumeier's conviction. Thank you. Thank you both for your arguments. And I believe that we'll take the matter under review. I just wanted to warn you that, of course, the stand and recess are for the remainder of the day.